IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| CANAL INSURANCE COMPANY ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: _____ |
| ) | |
| JACK E. SCHAEFER, JR.; ) | |
| JAMES PORTER MARTIN; and ) | |
| PATRIOT TRUCK LINES, LLC ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Comes now, the Plaintiff, Canal Insurance Company (hereinafter also, "Canal"), by and through Counsel, for its action against the Defendants will show the Court the following:

### PARTIES

1. The Plaintiff, Canal Insurance Company, is a commercial insurance company with principal place of business in Greenville, South Carolina.

2. The Defendant, Jack E. Schaefer, Jr., is a resident of Stark County, Ohio, and resides at 405 Marquardt Avenue, NE, North Canton, OH 44720.

3. The Defendant, James Porter Martin, is a resident of Pike County, Alabama, whose last known address is believed to be 9308 N. U.S. Highway 29, Banks, AL 36005 and was the employee/driver of/for Patriot at the time of his assault and battery of Mr. Schaefer.

4. The Defendant, Patriot Truck Lines, LLC, is an Alabama corporation engaged in the transportation of cargo, freight, and interstate commerce, for profit, in Banks, Alabama, and may be served with process through its registered agent, Stephen B. Garrott, at 691 Co. Rd. 3310, Troy, AL 36079.

1

5. Upon information and belief, the Defendant Patriot Truck Lines, LLC, owned the semi tractor-trailer being operated by the Defendant's employee James Porter Martin at the time of the aggravated assault in question on September 21, 2019 in Franklin, Williamson County, Tennessee.

6. The Plaintiff brings this action for declaratory judgment pursuant to 28 U.S.C. §§2201-2202. This Court has jurisdiction to hear this case pursuant to 28 U.S.C. § 1332 as it is between citizens of different states and the amount in controversy exceeds $75,000.00 exclusive of interests and costs.

7. This Court is the proper venue for this action pursuant to 28 U.S.C. § 1391 because it is the district in which the entirety of the event giving rise to the claim occurred and is where the Defendant's employee was arrested and charged for the offense of aggravated assault, pled guilty, and was sentenced to the Williamson County jail for 11 months and 29 days (a copy of the Criminal Warrant and Disposition Documents is attached hereto as collective **Exhibit A**).

8. The Plaintiff, Canal Insurance Company, issued its Commercial General Liability Policy and Commercial Auto Policy, policy number 1-626971001-1 (a copy is attached as **Exhibit B** and hereinafter, "the Policy"), to Patriot Truck Lines, LLC with an effective date of April 1, 2019 and a Policy Period end date of April 1, 2020. This Policy issued to the Defendant in Alabama and was in full force and effect at all times pertinent to this action.

9. On September 17, 2020, a Complaint for damages was filed in the Circuit Court of Williamson County, Tennessee by Jack E. Schaefer, Jr., seeking compensatory damages in an amount to be determined by a jury, not to exceed $250,000 or $500,000 (both figures were stated) and punitive damages in the amount of $500,000.00 ("underlying Complaint"). The Complaint bears the docket number 2020-428, and a copy is attached hereto as **Exhibit C**.

10. The allegations of the underlying Complaint arise out of an incident wherein James Porter Martin is alleged to have assaulted and battered Jack E. Schaffer, Jr. on September 21, 2019, while at a truck stop in Franklin, Tennessee.

11. The underlying Complaint alleges that Patriot Truck Lines, LLC was the owner of the semi-tractor being operated by employee James Porter Martin at the time of the incident in question, and the Answer of Patriot Truck Lines, LLC admitted the allegations (a copy of the Answer is attached hereto as **Exhibit D;** see paragraph 12).

12. On May 24, 2023, the victim of the aggravated assault who is the Plaintiff in the underlying lawsuit, testified by deposition as follows in pertinent part:

> 5 Q. Okay. How -- what led up to that? What
> 6 caused this altercation, or what are the events that
> 7 led up to it?
> 8 A. As we were approaching one another, he was
> 9 waving his hands very irate, gesturing. Very irate.
> 10 And when our trucks become close to one another, he
> 11 stopped, and I stopped my truck as he's waving his arms
> 12 up in the air. I could not see what he was trying to
> 13 say through the windshield. **He then proceeded to get
> 14 out of his truck. Then once I seen him getting out of
> 15 his truck, I thought I will get out to see what he's
> 16 trying to say, and we met between the two trucks.
> 17 As he's approaching me, he is cursing,
> 18 waving his arms up and down. He assaulted me.** And I
> 19 said to him in response of all of this -- him waving
> 20 his arms, cursing, and assaulting me of don't I know
> 21 how to drive?
> 22 And I said, "Can't you see the arrows in the
> 23 driveway?"
> 24 He continued on in his rage, and at some
> 25 point again, I said, "Can't you see the arrows in the driveway?"
>
> 2 This went back and forth. Probably I'll say
> 3 four times I said that while he's in his fit of rage,
> 4 assaulting me, cursing at me. And at that point, I was
> 5 like, I don't need to be here. I want out of here.
> 6 But I did say to him I said, "You're nothing but a
> 7 piece of shit."

> 8 And he -- his body turned to the right a
> 9 little bit, and then he turned around and come back and
> 10 coldcocked me in the face. That ended, obviously, the
> 11 conversation because I blacked out and went down.
> 12 Q. And what part of your face did Mr. Martin
> 13 strike?
> 14 A. The cheek, my left eye.
> 15 Q. And did he hit you with his -- with his
> 16 fist?
> 17 A. One time with his fist, one hit.
> 18 Q. Okay. And had you started to walk away back
> 19 to your truck at the time that he hit you?
> 20 A. No.

(A copy of Jack Schaefer's deposition testimony from pp. 41 and 42 is attached hereto as **Exhibit E**)(emphasis added).

13. The Plaintiff is presently providing a defense to Patriot Truck Lines, LLC under reservation of rights and is now seeking a declaration from this Court with regard to its rights and obligations under the Policy of insurance issued to the Defendant, Patriot Truck Lines, LLC. The Plaintiff denied coverage to James Porter Martin.

14. The Plaintiff contends that it has no duty under its Commercial General Liability Insurance Policy, policy number 1-626971001-1, to defend or indemnify Patriot Truck Lines, LLC and James Porter Martin under the facts alleged in the underlying Complaint.

15. Therefore, an actual, justiciable controversy exists relating to the legal rights and duties of the parties named herein. To the extent that Jack E. Schaffer, Jr. may be or will be at least indirectly affected by the relief sought by this Plaintiff in this case, the Plaintiff is making him a party to this litigation.

16. The Plaintiff's Commercial General Liability ("CGL") Policy states in pertinent part:

The Exclusion – Assault or Battery Endorsement (GL 673) states that this insurance does not apply to:

    **a.**    "Bodily injury" or "property damage";

    **(1)**    Expected or intended from the standpoint of any insured; or

    **(2)**    Arising out of an assault or battery, provoked or unprovoked, or out of any act or omission in connection with the prevention or suppression of an assault or battery, committed by any insured or an employee or agent of the insured.

The CGL policy states under "**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

    **1.**    **Insuring Agreement**

…

    **b.**    This insurance applies to 'bodily injury' and 'property damage' only if:

    **(1)**    The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory.'

…

An 'occurrence' means an **accident**, including continuous or repeated exposure to substantially the same general harmful conditions." (emphasis added).

17. The allegations in the underlying Complaint related to the incident indicate that the alleged bodily injury and associated damages claimed by the Plaintiff in the underlying lawsuit arose out of an assault and battery on the part of Mr. Martin that was provoked by the Plaintiff in the underlying lawsuit if Mr. Martin's representations are accepted only for the sake of discussion or argument. Accordingly, the Policy does not provide coverage and specifically excludes coverage.

18. If Mr. Martin's act of punching the Plaintiff (in the underlying lawsuit) in the face was designed to "prevent or suppress an assault or battery," the exclusion applies. Such bodily injury that arose out of even a "provoked assault and battery" is excluded from coverage. Also Mr. Martin's use of his fist to strike the face of the Plaintiff (in the underlying lawsuit) would be an

5

"expected or intended" tort that caused alleged bodily injury to the Plaintiff and accordingly was not an accident. Consequently, coverage is not provided and is specifically excluded.

19. The CGL policy excludes from coverage liability related to the following:

> "**g. Aircraft, Auto or Watercraft**
>
> 2. 'Bodily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any … 'auto' … owned or operated by or rented or loaned to any insured. Use includes operation and 'loading or unloading.'
>
> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the 'occurrence' which caused the 'bodily injury' or 'property damage' involved the ownership, maintenance, use or entrustment to others of any … 'auto' … that is owned or operated by or rented or loaned to any insured."

20. The Complaint alleges that "prior to attacking" the Plaintiff (in the underlying lawsuit) Mr. Martin had been acting within the course and scope of his employment with Patriot. Even the Plaintiff in the underling lawsuit is not alleging that Mr. Martin was acting within the course and scope of his employment with Patriot after he exited the truck and assaulted and battered the Plaintiff. To the extent, if any, Mr. Martin and/or Patriot may contend that Mr. Martin would not have been involved in the incident but for Mr. Martin's work as a driver for Patriot, then the exclusion related to bodily injury "arising out" of Mr. Martin's "use" of the truck or Patriot's "entrustment" of the same to Mr. Martin would exclude coverage.

21. Furthermore, the alleged bodily injury to the Plaintiff in the underlying lawsuit "arising out of the intentional tort of assault and battery" was not a foreseeable injury arising out of the "use" or the "entrustment."

22. Under SECTION **II** of the CGL Policy, as to Mr. Martin, an "insured" includes the following:

6

"**a.** Your 'volunteer workers' only while performing duties related to the conduct of your business, or your 'employees', other than either 'executive officers' … or your managers … but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business."

Coverages **A** or **B** of the CGL policy are limited as follows:

"**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

…

**(iv)** If the loss arises out of the maintenance or use of … 'autos' … to the extent not subject to Exclusion **g.** of section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

…

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any 'suit' if any other insurer has a duty to defend the insured against that 'suit'."

23. As alleged above concerning the exclusion related to Mr. Martin's "use" of the truck or Patriot's "entrustment" of the same to him, the exclusion applies, and any personal insurance that Mr. Martin may have should be considered as primary.

24. Liability for **Medical Payments** under **Coverage C** applies to medical expenses for "'bodily injury' caused by an accident … **(3)** Because of your operations" that are not "[e]xcluded under Coverage **A**." (page 8 of 16 of CGL policy).

7

25. Liability for **Supplementary Payment – Coverages A and B** provides for "**b.** Up to $250 for cost of all bail bonds required because of an accident or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds." (page 8 of 16 of CGL policy).

26. The fact that the "occurrence" was not accidental but was rather an intentional tort in the form of an assault and battery makes the coverage related to Medical Payments and Supplementary Payments inapplicable.

27. The CGL policy states that Canal "will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply." (page 1 of 16 of CGL policy).

28. Since coverage is not available under the terms of the Policy because the intentional torts in the forms of an assault and battery were not accidental and because the assault and battery exclusion applies to exclude coverage, Canal has no duty to defend the insured in the suit for which the Plaintiff seeks damages for bodily injury.

29. With respect to the Commercial Auto Policy (CA), the policy states as follows:

> "**A.** Coverage
>
> We will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an **'accident'** *and* **resulting from the ownership, maintenance or use of a covered 'auto**.' (emphasis added).
>
> …
>
> We have the right and duty to defend any 'insured' against a 'suit' asking for such damages …. However, we have no duty to defend any 'insured' against a 'suit' seeking damages for 'bodily injury'…."
>
> Aside from the usual and customary definition of an accident, the policy defines "accident" in SECTION V – DEFINITIONS as "includes continuous or repeated exposure to the same conditions resulting in 'bodily injury' or 'property damage.'"

The CA policy defines 'loss' as "direct and accidental loss or damage."

Under the CA policy, "[t]he following are 'insureds':

**a.** You for any covered 'auto'.

**b.** Anyone else while using with your permission a covered 'auto' you own, hire, or borrow except:

…

**c.** Anyone liable for the conduct of an 'insured' described above but only to the extent of that liability."

The CA policy states that this "insurance does not apply to any of the following:

**Expected Or Intended Injury**

'Bodily injury' or 'property damage' expected or intended from the standpoint of the 'insured.'

30. The alleged bodily injury and associated damages claimed by the Plaintiff in the underlying lawsuit arose out of an assault and battery on the part of Mr. Martin which is not "accidental" and is, accordingly, not covered.

31. For coverage to apply the bodily injury must also "result from the ownership, maintenance, or use of the covered auto." The Plaintiff in the underlying lawsuit does not allege and it cannot be reasonably alleged that Mr. Martin was acting within the course and scope of his employment after Mr. Martin exited the truck and engaged in the intentional tort of assault and battery. Mr. Martin was not operating the truck and was not even in the truck when he engaged in the intentional tort of assault and battery.

32. The **Alabama Punitive Damages Exclusion** is an endorsement that modifies the Commercial General Liability Coverage Form and the Business Auto Coverage Form and the Motor Carrier Coverage Form by adding the following Exclusion:

"This policy does not insure against or provide indemnity for fines, penalties, exemplary of punitive damages or any other type or kind of judgment or award which does not compensate the party benefiting from the award or judgment for any actual 'loss' or damage sustained.

9

This exclusion applies regardless of whether the damages are based upon the 'insured's' conduct or the conduct of some other party for whom the 'insured' may be legally responsible…."

33. Accordingly, the *ad damnum* stated in the Complaint for the recovery of up to $500,000.00 in punitive damages is not subject to recovery through insurance coverage under the Policy. See *Hill v. Campbell*, 804 So. 2d 1107 (Alabama Ct. App. 2001)

34. Pursuant to the above-referenced provisions of the Policy and for other good and sufficient reasons such as a failure to cooperate and the facts alleged in the underlying Complaint and the admissions of Mr. Martin and the sworn testimony of the victim of Mr. Martin's aggravated assault, Canal contends and asserts that it has no duty to defend or indemnify the Defendants.

WHEREFORE, PREMISES CONSIDERED, Canal prays:

1. That process issue and be served upon the Defendants requiring them to answer this Complaint for Declaratory Judgment;

2. For a declaration of rights, obligations, and legal relations of the Plaintiff and the Defendants by reason of the aforesaid Policy of insurance; and

3. For all legal and equitable relief that this Court may afford the Plaintiff.

*Respectfully submitted,*

**HARWELL & HURST PLLC**

By:   *s/ Marc H. Harwell*
MARC H. HARWELL, BPR #013817
*Attorneys for Canal Insurance Company*
832 Georgia Avenue, Suite 510
Chattanooga, TN 37402
Telephone: 423-756-7333
marc@harwelllawgroup.com

10